IOWA MUTUAL INSURANCE CO. V. CLARENCE E. FAULKNER ET AL

No. A-6138. Decided March 27, 1957.
Rehearing overruled May 1, 1957.
(300 S.W. 2d Series 639.)

184

*James R. Meyers* and *Coleman Gay,* both of Austin, for petitioner.

*Dan Moody, Jr.,* of Austin, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

The respondents, Faulkner and Toungate, own and operate a retail drug store in the City of Austin. During the nighttime persons broke into and entered these premises. From an unlocked cash register and filing cabinet they stole some $350.00 and unsuccessfully attempted to burglarize respondents' steel safe. In this attempt the safe was damaged.

Petitioner, Iowa Mutual Casualty Company, had issued to respondents a burglary policy in force at the time of the loss. The provision of the policy pertinent here is described as "COVERAGE D. Safe or Vault Burglary. Fireproof-Schwab safe, Underwriters label # 19-244." The insuring agreement as to this coverage reads as follows:

"COVERAGE D-Safe· Burglary. For all loss of or damage

(except fire) to money, securities and merchandise including the furniture, fixtures and other property in the premises *occasioned by burglary* or attempt thereat of any safe or vault in the premises; and also for such damage to the premises provided the insured is the owner thereof or is liable for such damage. "Burglary" as used herein shall mean a felonious entry into such safe or vault by actual force and violence (of which force and violence there shall be visible marks made by tools, explosives, electricity, gas or chemicals, upon the exterior of (a) all of the doors of the safe or vault if entry is made through such doors, or (b) the top, bottom or walls of the safe or vault, through which entry is made if not made through such doors) while all the doors of such safe or vault are duly closed and locked by combination or time lock and while such safe or vault is located in the premises, or elsewhere after removal therefrom by burglars." (Emphasis ours).

The trial court held that under the terms of this provision the petitioner, insurer, was liable for the loss of mony sustained by the respondents. The Court of Civil Appeals affirmed with a dissenting opinion. 294 S.W. 2d 911. We disagree with the result arrived at by the majority.

The petitioner admits liability for the damage to the safe but denies that the loss of the money is covered by its policy. It is conceded that but for the attempted burglary of the safe no liability at all on the policy would be here incurred. The respondents contend that the provision should be construed so as to permit them to recover even if the words "caused by" had been used instead of "occasioned by," but that the latter term is a broader one and more inclusive and connotes the idea of "incidental or furnishing the opportunity for." The verb "occasion" is defined in Webster's New International Dictionary, Second Edition, 1954, as follows:

1. "To give (one) a prompting opportunity or ground; also, to prompt or induce in this way habitually; hence, to habituate. Obs.

2. "To give occasion to; to cause, esp. incidentally; to bring about; as, to occasion anxiety or mirth."

■ Two decisions cited by respondents discuss the use and meaning of the word. In Smart v. Raymond, 142 S.W. 2d 100, Missouri Court of Appeals, complaint was directed to the Court's charge in the use of the words "defendants' negligence

*directly occasioned* the automobile truck \* \* \* to strike and collide with plaintiff." The opinion points out that when the word "occasion" is used as a verb it often means to cause or bring about by furnishing the condition or opportunity for the action of some other cause, but on the other hand it is also employed synonymously with "cause" in the sense of proximate cause and the Court thought that the jury would understand the latter to be the meaning of the word. Respondents quote from Curry v. The Chicago & Northwestern Railway Co., 43 Wis. 665, 676, "what is caused seems to follow naturally; what is occasioned follows incidentally." In that case the Court explains that the want of a fence cannot be the direct cause of injury to cattle, but brings it about incidentally in giving the occasion for the animals to go upon the railroad tracks and be there injured. Also in the same sense it is said that a defect in a street is not the cause of an injury, but rather gives the opportunity for injury to the traveler. Following this reasoning we may draw the somewhat fine distinction that the asportation of funds from a safe is not caused by the violent entry but rather occasioned thereby. Even giving the broad meaning ascribed to the word "occasioned" we do not agree that the attempt to burglarize the safe, even incidentally, caused or furnished the opportunity for the pilferage of the cabinet and the cash register. To our minds the only connection between the attempted burglary and theft was one of time. The two events happened somewhat contemporaneously. What did afford the opportunity for the theft was the unlawful breaking into and entering the premises. The theft must have occurred either before the attempt at burglary or after the attempt had been abandond. It was not committed during or as a result of the process of attempting to gain entry into the safe by force and violence. We think, therefore, from the wording of the agreement that loss or damage "occasioned by" a burglary or attempted burglary must be held to cover only money and articles abstracted from the safe and such damage resulting from the violence used in the attempt. For instance, if explosives, chemicals or other violent means had been used, that damaged the cabinet and cash register or the furniture and fixtures or other property owned by the respondents upon the premises, and the premises if owned by the respondents, the insurer would be liable upon the policy for that damage. This damage might be said to be incidental, at least, to the principal objective.

Clearly, the primary intention of the parties to this contract was to furnish protection against loss of money and valuables in the safe from forcible and violent entry therein. The policy

imposed upon the insured the duty of keeping his safe securely locked so that entry could not be made without force, that would leave visible marks upon the outside. Impliedly, it would seem, the obligation also rested upon respondents to keep their cash in the safe after closing time.

In National Surety Co. v. Volk Bros., 125 Texas 398, 82 S.W. 2d 622, this Court denied recovery under a safe burglary policy, although the knobs on the outer door of the safe had been knocked off and the inner door blown open with explosives, for the reason that the safe was opened by manipulation of the lock and the marks of force and violence did not contribute to effect the entry into the safe. As pointed out by petitioner, under the facts in that case the Court of Civil Appeals would have held liability under the policy for any money and valuables stolen from elsewhere on the premises while denying recovery for the money abstracted from the safe. This would produce a most illogical result.

■ The rules applicable to construction of insurance policies are the same as those used in interpreting ordinary contracts. In holding that the late Korean conflict was a war in the general acceptation of the term and in purview of the policy of life insurance issued by the company, we adhered to this established principle of law and said that the terms used "are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows them to have been used in a technical or different sense." Western Reserve Life Insurance Co. v. Meadows, 152 Texas 559, 261 S.W. 2d 554, 557.

In Universal C. I. T. Credit Corp. v. Daniel, 150 Texas, 513, 243 S.W. 2d 154, we restated the rule to be that a contract is not ambiguous unless, after the application of the rules of construction, there is a genuine doubt as to the meaning of the contract. Applying these principles to this policy we have no uncertainty as to the conclusion that the coverage does not embrace the loss here sued for. We think there is no basis for respondents' contention that the term "attempted burglary" of the safe should be enlarged so as to include the act of breaking into the store though the burglars came with their tools and with the intent to break into the safe. If the policy had provided against loss or damage occasioned by burglary of the *premises,* the respondents would stand on more solid ground. But we cannot hold that a policy insuring against "burglary of the safe" would be the equivalent of or afford the same protection as one insuring against burglary of the premises.

For yet another reason the meaning of the insuring agreement must be determined adversely to respondents' contention. It is proper to consider coverages in the policy that have been rejected by the insured as an aid in ascertaining the extent of the coverage purchased. Glens Falls Ins. Co. v. McCown, 149 Texas 587, 236 S.W. 2d 108; United States Ins. Co. v. Boyer, 153 Texas 415, 269 S.W. 2d 340. The policy offered "COVERAGE E"—OPEN STOCK BURGLARY, protecting against loss or damage to merchandise, furniture, fixtures and other property occasioned by burglary or attempt thereat of the premises, and "COVERAGE F—BURGLARY KEYLOCKED RECEPTACLE," protecting against loss or damage to money and securities, including damage to furniture, fixtures and other property in the premises occasioned by burglary or attempt thereat of any keylocked cash register, cash drawer, safe or other keylocked receptacle. The offer of Coverage F would indicate that the safe burglary coverage would not protect the insured against the loss herein sued for. As said by Justice Hughes in his dissent "It is obvious that the risk incident to insuring contents of a safe or vault is much less than the risk of insuring against the loss of loose money about the premises."

Respondents rely rather heavily on our holding in Continental Casualty Co. v. Warren, 152 Texas 164, 254 S.W. 2d 762, to the effect that where the intent of the policy is not so certain as to make insured's construction of the policy wholly unreasonable, that construction will prevail. But we decide that there is no ambiguity in this coverage and that the construction urged by respondents is unreasonable. Recovery is therefore denied as to the disputed items.

The judgments of the courts below are reversed and the cause remanded to the trial court for the entry of a judgment in accordance with this opinion.

Opinion delivered March 27, 1957.

Rehearing overruled May 1, 1957.