**EVERGREEN NATIONAL INDEMNITY COMPANY, Appellant,**

v.

**TAN IT ALL, INC., Appellee.**

No. 03–02–00426–CV.

Court of Appeals of Texas, Austin.

June 19, 2003.

Levon G. Hovnatanian, Christopher W. Martin, Bruce E. Ramage, James Michael Cleary Jr., Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, for appellant.

William S. Rhea, Rhea & Rodman, L.L.P., Austin, for appellee.

Before Justices KIDD, YEAKEL and PATTERSON.

## OPINION

JAN P. PATTERSON, Justice.

This is an appeal from a summary judgment in a declaratory judgment action involving first-party commercial insurance coverage. Appellee Tan It All, Inc. ("TIA"), which operates tanning salons, sued its property insurer, Evergreen National Indemnity Company, to recover the cost of tanning equipment stolen from one of its trucks. The truck was parked in the parking lot of a shopping center containing one of TIA's salons. The issue before us is whether the term "described premises" in a commercial property policy covers business personal property located "within 100 feet" of any portion of the entire shopping center complex in which the insured leases only a suite as its business premises.

The district court found the policy to be ambiguous and, based on the doctrine of *contra proferentem,* interpreted it to provide coverage. Evergreen appeals, complaining that the policy is not ambiguous, but if it is ambiguous, TIA's interpretation is unreasonable. Evergreen further contends that because there is no coverage, TIA was not entitled to attorney's fees or a penalty award under the Prompt Pay of Claims Act. *See* Tex. Ins.Code Ann. art. 21.55 (West Supp.2003). We will reverse and render that TIA take nothing by its claims.

## FACTUAL BACKGROUND

The facts surrounding the loss are not in dispute; the parties stipulated to many key facts. On July 30, 2000, tanning equipment was stolen from a TIA truck while it was parked in a parking lot at the Town Fork Plaza shopping center on Highway 183 in Austin. TIA operated a tanning salon, Tansyou, in Suite C–5 of the shopping center. The parking lot in question was a "common area" of the shopping center. At the time of the theft, the truck was parked 280 feet from the front entrance of the salon. TIA submitted a claim for the value of the equipment to Evergreen, which the parties stipulated was $45,483.27.

The claim was denied because the "property was not within the coverage area at the time of the theft." TIA sued Evergreen for breach of contract, violations of the Texas Deceptive Trades Practices and

Consumer Protection Act ("DTPA"), violations of articles 21.21 and 21.55 of the Texas Insurance Code, and for attorney's fees and costs.[1] The district court granted TIA partial summary judgment on the coverage question. TIA subsequently waived its DTPA and article 21.21 claims and moved for final judgment on its contract and article 21.55 claims. The court granted final judgment for TIA, awarding it $45,483.27 for breach of contract, $6,092.96 as prejudgment interest, $12,628.09 as a statutory penalty under article 21.55, $12,000 as attorney's fees, as well as post-judgment interest and costs, and stipulated appellate attorney's fees for any unsuccessful appeal by Evergreen.

The policy in question is a commercial property policy (ISO Form CP 00 10 10 91 (ed.1990)) issued by Evergreen to "Marji Breslow dba Tan It All, Inc.," covering the policy period of November 2, 1999 to November 2, 2000. The basic insuring agreement of the property policy provides:

> We will pay for direct physical loss of or damage to Covered Property *at the premises described in the Declarations* caused by or resulting from any Covered Cause or Loss.

(Emphasis added.) There is no question that the insured suffered a direct physical loss and that theft is a type of loss covered by the policy. The coverage form categorizes "Covered Property at the premises described in the Declarations" as: "a. Building"; "b. Your Business Personal Property"; or "c. Personal Property of Others." "Your Business Personal Property" is defined in the policy as:

> b. *Your Business Personal Property located* in or on the building described in the Declarations or in the open (or

*in a vehicle*) *within 100 feet of the described premises,* consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property—Separate Coverage form:[2]

(1) Furniture and fixtures;

(2) Machinery and *equipment;*

(3) "Stock";

(4) All other *personal property* owned by you and *used in your business;*

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

(Emphasis added.)

The parties stipulated that the stolen tanning equipment was business personal property within the meaning of this policy. The crucial question is whether at the time of the theft the tanning equipment was located "at the premises described in the Declarations" or in a vehicle "within 100 feet of the described premises" to constitute covered business personal property.

---

**1.** *See* Tex. Bus. & Comm.Code Ann. §§ 17.46–.59 (West 2002); Tex. Ins.Code Ann. arts. 21.21, 21.55 (West 1981 & Supp.2003).

**2.** The record does not contain a separate coverage form for business personal property included in this policy.

The relevant declarations sheet is Evergreen's "Commercial Property Coverage Part Declarations." It describes the following premises, including the one at issue:

DESCRIPTION OF PREMISES:

| PREM/BLDG NO | | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|---|
| 01 | 01 | 4528 Westgate, Austin, TX 78745; Frame, Tanning Salon |
| ~~02~~ | ~~01~~ | ~~7301 Barnet[sic] Road, Austin, TX 78757; Frame, Tanning Salon~~ |
| 03 | 01 | 12636 Research # 107C, Austin, TX 78759; Frame, Tanning Salon |
| 04 | 01 | 13945 North Highway 183, Suite C–5, Austin, TX 78717; Frame, Tansyou |
| 05 | 01 | 2025 Guadalupe # 252, Austin, TX 78705, Frame, Tan It All |

This case concerns the fourth insured premises listed in the declarations: "13945 North Highway 183, Suite C–5, Austin, TX 78717." Evergreen contends that the policy only covers business personal property at 13945 North Highway 183, Suite C–5, or in a vehicle located within 100 feet of Suite C–5. TIA contends that the policy covers business personal property within 100 feet of any portion of the shopping center at 13945 North Highway 183. The truck containing the tanning equipment was parked 280 feet from the entrance of Suite C–5, but in the parking lot and within 100 feet of other shopping center buildings at 13945 North Highway 183.

TIA leased the premises at Town Fork Plaza, and its written lease of that premises was submitted as summary judgment evidence. TIA's lease of Suite C–5 gave it certain legal rights regarding the common areas of the shopping center, which included the parking lot in dispute. TIA paid separately for its "proportionate share of the cost" of the common area. The landlord required TIA to park its company-owned vehicles in a certain area in the common area parking lot, and that area was more than 100 feet from TIA's storefront. TIA "was not permitted to park company owned vehicles within 100 feet of the storefront itself." At the time of the theft, TIA's truck was parked in the area designated by the landlord.

The lease, however, provides that the common areas of the shopping center are under the "sole management and control" of the landlord. Evergreen points out that TIA's lease grants TIA only a "nonexclusive right and license" to use the common areas.

## DISCUSSION

### Standard of Review

This appeal involves a traditional summary judgment proceeding. *See* Tex.R. Civ. P. 166a(c). The propriety of a summary judgment is a question of law, which we review *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Roland v. DaimlerChrysler Corp.*, 33 S.W.3d 468, 469 (Tex.App.-Austin 2000, pet. denied). We apply the following standards in conducting our review: (1) a summary judgment movant has the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in determining whether a material fact issue exists, evidence favorable to the nonmovant is taken as true; and (3) every reasonable inference is indulged in favor of the nonmovant. *Nix-*

on v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex.1985).

■ When the parties file competing motions for summary judgment, with one granted and the other denied, we review all the summary judgment evidence presented and determine the propriety of the rulings on both summary judgment motions. *See CU Lloyd's of Tex. v. Main Street Homes, Inc.,* 79 S.W.3d 687, 692 (Tex.App.-Austin 2002, no pet.). When both sides move for summary judgment and the trial court grants one and denies the other, we determine all questions presented, and render the judgment the trial court should have rendered. *Commissioners Court v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). Also, we may render judgment for the other movant as long as both parties sought final judgment in their cross-motions. *CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998) (per curiam).

■ Generally, the insured had the burden to prove its claim comes within the scope of coverage provided by the policy, and the insurer has the burden to prove a claim comes within a policy exclusion or limitation of coverage. *Venture Encoding Serv. v. Atlantic Mut. Ins. Co.,* 107 S.W.3d 729, 733 (Tex.App.—Fort Worth 2003, no pet. filed); *see also* Tex. Ins.Code Ann. art. 21.58 (West Supp.2003); *Employers Cas. Co. v. Block,* 744 S.W.2d 940, 944 (Tex.1988). In this case, the insured bears the burden of showing its claim comes within the coverage afforded by the basic insuring agreement of the policy.

### District Court Found an Ambiguity

The district court granted TIA's motion for partial summary judgment and ren-

dered an interlocutory order setting forth "issues of material fact [that were] established as a matter of law." The court expressly found that "the business personal property that was stolen from [TIA] on July 30, 2000 was stolen from a vehicle that was parked within 100 feet of [TIA]'s premises, which includes the parking lot." It found as a fact [3] that "the insurance policy is ambiguous" regarding the definition and identification of the insured's premises, and that consequently, the interpretation that favors the insured was adopted. Finally, the court found that the "definition of the term 'premises' for purposes of this cause of action includes the common area parking lot where [TIA]'s vehicle was parked at the time of the described loss."

### Rules of Contract Interpretation and Construction

■ Insurance policies are subject to the same general rules of interpretation and construction as ordinary contracts. *Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.2003); *Brown v. Palatine Ins. Co.,* 89 Tex. 590, 35 S.W. 1060, 1060–61 (1896). The primary object of construing an insurance policy is to enforce the insurance contract as the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). It is the objective, not subjective, intent that controls this determination. *Utica Nat'l Ins. Co. of Tex. v. Fidelity & Cas. Co. of N.Y.,* 812 S.W.2d 656, 661–62 (Tex.App.-Dallas 1991, writ denied) (citing *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968)). The construction of an insurance policy is a legal issue for the court. *Atlantic Lloyd's Ins. Co. of Tex. v. Sus-*

---

**3.** Although the district court labeled its decision on these issues as factual findings, they are matters of law. Whether an ambiguity exists is a question of law for the court. *Kel-*

*ley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998) (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)).

*man Godfrey, L.L.P.,* 982 S.W.2d 472, 475 (Tex.App.—Dallas 1998, pet. denied).

If a policy can be given only one reasonable meaning, it is not ambiguous and will be enforced as written. *State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex.1998); *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). Only the terms of the contract should be consulted when interpreting an unambiguous contract provision. *See Brown,* 35 S.W. at 1061 ("The language used must be construed according to the evident intent of the parties, to be derived from the words used, the subject matter to which they relate, and the matters naturally or usually incident thereto.").

However, if the contract is susceptible to more than one reasonable meaning, it is ambiguous. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997); *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). Determining whether a provision is ambiguous requires that we examine the entire contract in light of the circumstances that existed when the parties formed the contract. *Vaughan,* 968 S.W.2d at 933. Not every difference in contract interpretation amounts to an ambiguity. *McKee,* 943 S.W.2d at 458; *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 n. 3 (Tex.1993). Neither the intricacies of policy language nor the complexities of a coverage dispute necessarily indicate an ambiguity. Moreover, extraneous evidence is not admissible to create a contractual ambiguity. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.

1998); *Iowa Mut. Ins. Co. v. Faulkner,* 157 Tex. 183, 300 S.W.2d 639, 642 (1957).

It is only when a provision is first determined to be ambiguous that extraneous matters then may be used to construe the provision. *Kelley–Coppedge, Inc.,* 980 S.W.2d at 464; *Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.,* 56 S.W.3d 313, 319 (Tex. App.-Houston [1st Dist.] 2001, no pet.). The existence of an ambiguity creates a question of fact for the jury and summary judgment is improper. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). Parol evidence then becomes admissible to assist the trier of fact in determining the parties' intent. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980).

### Contra Proferentem

The doctrine of *contra proferentem*[4] is a device of last resort employed by courts when construing ambiguous contractual provisions. *AT & T Corp. v. Rylander,* 2 S.W.3d 546, 560 (Tex.App.-Austin 1999, pet. denied); *GTE Mobilnet Ltd. P'ship. v. Telecell Cellular,* 955 S.W.2d 286, 291 (Tex.App.-Houston [1st Dist.] 1997, writ denied); *Smith v. Davis,* 453 S.W.2d 340, 344–45 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.) (declining to apply doctrine in face of contractual ambiguity); *see also Forest Oil Corp. v. Strata Energy,* 929 F.2d 1039, 1043–44 (5th Cir. 1991) ("a contract generally is construed against its drafter only as a last resort under Texas law—i.e., after the application

---

**4.** Originally, the doctrine was labeled *verba chartarum fortius accipiuntur contra proferentem.* 3 Arthur L. Corbin, Corbin on Contracts § 559, at 262 (1960 & Supp.1971). In the insurance context, the doctrine is also referred to as the "ambiguity rule," *see Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 939 (Tex.1984) (Wallace, J., concurring), or the "contra-insurer" rule, *see Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 328 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

of ordinary rules of construction leave a reasonable doubt as to its interpretation"). It is essentially a tie-breaking device used to prevent arbitrary decisions when all other methods of interpretation and construction prove unsatisfactory.

■ Under the doctrine, an ambiguous contract will be interpreted against its author. *Balandran*, 972 S.W.2d at 741 n. 3 (applying doctrine to matters of coverage exclusion). In the insurance context, it operates so that ambiguous policy provisions are construed against the insurer and in favor of coverage. *See McKee*, 943 S.W.2d at 458; *Kelley–Coppedge, Inc.*, 980 S.W.2d at 464.[5] If the policy interpretation offered by the insured of an ambiguous provision is reasonable, it will be adopted even if the insurer's interpretation is objectively more sensible, *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991); *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976), "as long as that [the insured's] construction is not unreasonable." *Balandran*, 972 S.W.2d at 741.

### No Ambiguity Exists as to Insured Premises

■ The policy provision in question covers "business personal property located ... within 100 feet of the described premises." The pertinent premises described in the declarations is "13945 North Highway 183, Suite C–5, Austin, Texas 78717." TIA's interpretation requires us to omit "Suite C–5" from the description of the insured premises in the policy declara-

tions. The district court's ruling means that the policy covers business personal property within 100 feet of 13945 North Highway 183, which could include any portion of the entire shopping center, along with its parking lot and other common areas.[6] However, the parties clearly expressed their intent in the policy that Evergreen insure TIA's salon located in Suite C–5 of the shopping center. Had the parties intended to cover the entire shopping center, they would not have inserted "Suite C–5" into the description of the covered premises. Only the interpretation urged by Evergreen gives effect to all elements of the premises description on the declarations page.

■ We must give the words used in the premises description their plain, ordinary and generally accepted meaning unless the policy itself indicates that they were used in a technical or specialized sense. *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979); *Iowa Mut. Ins. Co.*, 300 S.W.2d at 642. Consequently, if one party's interpretation would require the insertion of a qualifying phrase, that interpretation must be rejected as violating the rule that the language of a policy must be given its ordinary meaning. *County of Maverick v. Texas Ass'n of Counties of Workers' Comp. Self–Insurance Fund*, 852 S.W.2d 700, 705 (Tex.App.-San Antonio 1993, no writ). Likewise, if a party's interpretation requires that a word or phrase in the policy be ignored, that interpretation must be rejected as violating the same rule. *See Balandran*, 972

---

5. *See Moulor v. American Life Ins. Co.*, 111 U.S. 335, 342–43, 4 S.Ct. 466, 28 L.Ed. 447 (1884) ("The doubt, as to the intention of the parties, must, according to the settled doctrines of the law of insurance, recognized in all the adjudicated cases, be resolved against the party whose language it becomes necessary to interpret.").

6. We are mindful that these conflicting interpretations regarding the scope of coverage have significant actuarial implications. *See Douglas v. Southwestern Life Ins. Co.*, 374 S.W.2d 788, 792 (Tex.Civ.App.-Tyler 1964, writ ref'd n.r.e.).

S.W.2d at 741; *United Serv. Auto. Ass'n v. Miles,* 139 Tex. 138, 161 S.W.2d 1048, 1050 (1942) ("when reasonably possible, meaning must be given to every sentence, clause and word of a contract of insurance so as to avoid rendering portions of it inoperative").

■■■■■ We hold that the policy is not ambiguous and we need not resort to the rules of construction. The policy expressly states on its face that it covers business personal property in or on Suite C–5 or within 100 feet of Suite C–5. We may not engage in policy construction to contrive an ambiguity when the meaning of the policy language is plain and certain. The district court erred in concluding that the policy was ambiguous and in applying the doctrine of *contra proferentem* by construing the policy against Evergreen in this instance. We will not interpret policy language so as to render portions of it surplusage. *See, e.g., Commercial Union Assurance Co. PLC v. Silva,* 75 S.W.3d 1, 4 (Tex.App.-San Antonio 2001, pet. denied).

■■■■ Both parties cite this Court to the decisions of other jurisdictions interpreting similar policy language, some finding an ambiguity and others finding the language unambiguous.[7] The case cited by TIA actually supports Evergreen's position. *See Zohar Creations, Ltd. v. Those Certain Underwriters at Lloyds,* 176 A.D.2d 611, 575 N.Y.S.2d 51 (1991), *appeal denied,* 79 N.Y.2d 755, 581 N.Y.S.2d 666, 590 N.E.2d 251 (1992). There, the insured suffered a theft loss of $1,000,000 of diamonds. Instead of paying the $400,000 policy limit for the policy's jewelry coverage, the insurer argued a $25,000 limit for "off premises" loss was applicable. The court interpreted the policy covering the " 'Assured's premises described herein" and whether it

covered the "hallway area outside Room 204A at 2 West 47th Street." The declarations described the insured as " 'Zohar Creations, Ltd, 2–4 West 47th Street, New York, New York 10036.' " The policy contained "an unrelated policy provision extending coverage to Room 204A," and the insurer argued that it limited the insured premises to Room 204A. The court rejected the insurer's argument and noted that policy terms of limitation or exclusion must be expressed in clear, unambiguous terms, so that the court could not infer such a limitation to the entire policy. *Id.* at 612, 575 N.Y.S.2d 51. Thus, because Room 204A was not included in the policy description of the declarations, the court declined to rewrite the policy to insert it. By analogy, we believe TIA seeks to have the limitation of "Suite C–5" removed from the policy declarations at hand.

### Prompt Payment of Claims Act Penalty and Other Relief

■■■■ All ancillary relief granted to TIA by the district court was predicated upon the existence of coverage under the policy. Evergreen complains about TIA's recovery of the statutory eighteen percent penalty under article 21.55, section 6. *See* Tex. Ins.Code Ann. art. 21.55, § 6 (West Supp.2003). To recover a statutory penalty under article 21.55, an insured must establish: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to comply with one of the requirements of article 21.55 with respect to the claim. *Allstate Ins. Co. v. Bonner,* 51 S.W.3d 289, 291 (Tex.2001). Because we hold that the policy in question did not afford coverage for TIA's loss, TIA is not entitled to the

7. The fact that courts of other jurisdictions have reached differing conclusions does not render a policy provision ambiguous. *See*

*Betco Scaffolds Co. v. Houston United Cas. Ins. Co.,* 29 S.W.3d 341, 344 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

statutory penalty provided by the Prompt Payment of Claims Act. *See id.* at 292 (holding lack of coverage prevented recovery of attorney's fees under article 21.55, section 6).

■ Evergreen also complains about TIA's recovery of attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (West 1997) (one may recover reasonable attorney's fees on any claim based on oral or written contract). TIA also pleaded for attorney's fees under the insurance code and the DTPA. Although TIA waived its article 21.21 and DTPA claims, article 21.55, section 6 also provided for recovery of attorney's fees. The court did not specify under which statute it awarded TIA attorney's fees. Nevertheless, the existence of coverage was a prerequisite to TIA's recovery of attorney's fees under either section 38.001(8) or article 21.55, section 6. Without coverage, TIA cannot recover attorney's fees. *See Bonner,* 51 S.W.3d at 291. Evergreen's complaint about the statutory penalty and attorney's fees are sustained.

### Procedural Posture

■ At the hearing on the summary judgment motions, the court sustained Evergreen's objections to deposition testimony submitted by TIA, because the deponent had not had sufficient time to review the deposition transcript, so the hearing of Evergreen's motion was to be reset. At TIA's insistence, the court proceeded with TIA's motion for partial summary judgment, eventually granting it by interlocutory order. TIA concedes that a Mother Hubbard clause in the final judgment impliedly disposed of Evergreen's motion, but TIA objects to this Court rendering judgment on Evergreen's motion because it was never actually heard by the court.

The summary judgment motions mirrored each other on the coverage question. Evergreen's motion differed in that it also sought full summary judgment on TIA's tort claims, which TIA subsequently abandoned. The judgment was final because it clearly, unequivocally disposed of all claims by TIA, which was the only party to seek affirmative relief. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191, 205 (Tex.2001); *cf. Moritz v. Preiss,* —— S.W.3d ——, ——, 46 Tex. Sup.Ct. J. 784, ——, (June 12, 2003), 2003 Tex. LEXIS 77, at * 6–7 (involving judgment rendered after jury trial).

Texas Rule of Appellate Procedure 43.3 provides that the court of appeals must render judgment except when remand is necessary for further proceedings or the interests of justice require remand for a new trial. Neither of these contingencies is present. Furthermore, this case does not involve the sort of situation involved in *Feldman* where the judgment rendered by the court of appeals disposed of issues not addressed or disposed of in the trial court. *See Feldman,* 977 S.W.2d at 569. By granting final judgment in favor of TIA, the district court impliedly denied Evergreen's motion. *See id.; Jones,* 745 S.W.2d at 900. On appeal, Evergreen challenges both the granting of TIA's motion and the implicit denial of its summary judgment motion. *See Jones,* 745 S.W.2d at 900. Finally, we note that Evergreen was the only party to have formally moved for full and final summary judgment in the court below; therefore, this case is in the proper procedural posture to allow reversal and rendition for Evergreen.

### CONCLUSION

We reverse the judgment of the district court and render judgment that the policy did not provide coverage for the loss of

TIA's business personal property so that TIA should take nothing by its claims.