# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20239

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2015

Lyle W. Cayce
Clerk

AMERISURE MUTUAL INSURANCE COMPANY,

> Plaintiff – Appellee Cross-Appellant

v.

ARCH SPECIALTY INSURANCE COMPANY,

> Defendant – Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before JONES and HAYNES, Circuit Judges, and CRONE, District Judge.*
HAYNES, Circuit Judge:

Arch Specialty Insurance Company ("Arch") appeals an adverse summary judgment in favor of Amerisure Mutual Insurance Company ("Amerisure") in this insurance policy dispute. Amerisure cross-appeals. Concluding that Amerisure has exhausted its policy limits, we AFFIRM the part of the judgment regarding the duty to indemnify, REVERSE the part of the judgment regarding the duty to defend, and RENDER judgment in Arch's favor.

---

* District Judge of the Eastern District of Texas, sitting by designation.

No. 14-20239

I.     Facts and Background

In 2006, Amerisure issued a Texas Commercial Package Policy to Admiral Glass & Mirror Co. ("Admiral").  The policy afforded coverage in excess of any coverage afforded by a controlled insurance program policy.  Arch issued an Owner Controlled Insurance Program ("OCIP") policy to Endeavor Highrise, LP ("Endeavor") and its contractors and subcontractors for bodily injury and property damage arising out of construction of the Endeavor Highrise.  Admiral is a subcontractor insured under the OCIP policy.  The OCIP policy had combined bodily injury and property damage limits of $2,000,000 per occurrence, a general aggregate limit of $2,000,000, and a products-completed operations aggregate limit of $2,000,000.   The OCIP did not provide coverage for property damage during the course of construction.  The OCIP policy contains a Supplementary Payments provision which provides that Arch will pay "[a]ll expenses we incur" in connection with any covered claim, and that "[t]hese payments will not reduce the limits of insurance."  Endorsement 16 to the OCIP policy expressly deletes and replaces the statement quoted above with: "[supplementary payments] will reduce the limits of insurance."  The OCIP policy also provides that Arch's duty to defend ends "when we have used up the applicable limit of insurance in the payment of judgments or settlements."

Prior to the claim giving rise to this lawsuit, Arch settled three claims under the OCIP policy: a wrongful death suit arising from a worker's fatal fall (settled for $1,555,000.00; attorneys' fees and defense costs of $159,543.160); a toilet leak claim in one of the apartment units (settled for $60,000; attorneys' fees and defense costs of $62,620.18 incurred); and a fire sprinkler leak claim (settled for $880,000; attorneys' fees and defense costs of $31,671.87 incurred).

On June 7, 2010, Endeavor sued Admiral and others for faulty work.  Amerisure tendered the lawsuit to Arch as the primary insurer.  Prior to Arch

2

No. 14-20239

accepting the defense, Amerisure incurred $23,879.27 in defense fees. In April 2012, Arch withdrew from defense of the Endeavor lawsuit asserting that attorneys' fees, defense costs, and settlements of $2,000,000.00 from defending Admiral and other subcontractor defendants exhausted policy limits. Amerisure took over the defense and incurred additional fees and costs of $114,957.14 before settling the claims against Admiral. In total, Arch paid a settlement of $1,555,000.00 and defense costs of $159,543.15 under the general coverage limit of the OCIP, and paid settlements totaling $1,472,032.61 and defense costs of $527,967.36 under the products-completed operations coverage of the OCIP policy.

Amerisure sued Arch in Texas state court for breach of contract, contending that Arch wrongfully refused to defend and indemnify Admiral. Arch removed the case to federal court based on diversity jurisdiction. Amerisure filed a motion for partial summary judgment seeking a declaration that: (1) Arch had not exhausted the policy because defense costs did not erode the policy limits; or (2) Arch had a continuing duty to defend after the policy was exhausted. Arch filed a cross-motion for partial summary judgment on the same issues and a second motion for partial summary judgment seeking a declaration on a third issue: that it had not "wrongfully exhausted" the policy by paying uncovered claims.

Based on three issues, the magistrate judge recommended that Arch's second partial summary judgment motion be granted and the cross-motions for summary judgment each be granted in part and denied in part. The magistrate judge determined that (1) defense costs and attorneys' fees were "expenses" under the Supplementary Payments provision and therefore eroded the policy limits; (2) though subject to the same policy limits, the duty to defend ended only when the policy limits were exhausted by judgments and settlements alone (i.e., not by defense costs); and (3) coverage existed for the toilet and

3

sprinkler leaks and therefore Arch did not "wrongfully exhaust" the policy limits with payments on uncovered claims. The district court adopted the magistrate's recommendation over both parties' objections and held that Arch did not breach its duty to indemnify, but did breach its duty to defend Admiral.

Arch appealed the finding that it had a duty to defend Admiral that had been breached. Amerisure cross-appealed the part of the judgment holding that Arch had no duty to indemnify Admiral with respect to the underlying lawsuit filed by Endeavor.

## II.     Standard of Review

We review the district court's grant of summary judgment de novo, construing all facts and evidence in the light most favorable to the non-moving party. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

## III.    Discussion

### A.  Policy Limits – Eroding or Not?

As with all disputes over insurance policies, we begin with the language of the policy. The following provisions are central to the dispute over policy limits:

***Supplementary Payments Provision***

> **SUPPLEMENTARY PAYMENTS –**
> **COVERAGES A AND B**
> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>     a.  All expenses we incur.

No. 14-20239

. . .

These payments will not reduce the limits of insurance.

*Endorsement 16*

**SUPPLEMENTARY PAYMENTS REDUCE THE LIMITS OF INSURANCE: DEDUCTIBLE POLICY ENDORSEMENT**

It is hereby understood and agreed that "**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**" within "**SECTION I – COVERAGES**", is amended as follows:

The provision:

"These payments will not reduce the limits of insurance."

is deleted in its entirety and is replaced with the following provision:

"These payments **will reduce** the limits of insurance."

It is hereby further understood and agreed that "**SECTION III – LIMITS OF INSURANCE**" is amended to include the following provision:

All Limits of Insurance are reduced by the payment of those amounts set forth within "**SUPPLEMENTARY PAYMENTS – COVERAGES AND B**" within "**SECTION I – COVERAGES**".

All other terms and conditions of this Policy remain unchanged.

*Duty to Defend Provision*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

5

No. 14-20239

**1. Insuring Agreement**

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
>
> > (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

Amerisure argues that the term "expenses" in the Supplementary Payments provision does not include attorneys' fees and other costs of defense. It also argues that, even if "expenses" includes defense costs, the effect of the statement "All other terms and conditions of this Policy remain unchanged" read together with the language that the duty to defend expires when "we have used up the [policy limits] in the payment of judgments or settlements" means that the policy limits are eroded only by payment of "judgments or settlements," not defense costs. For its part, Arch argues that "expenses" include defense costs and that the Endorsement controls over any contrary language such that it converts this policy into an eroding policy. We agree with Arch.

"Liability insurance policies often have two components:  defense and indemnity." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559 (5th Cir. 2008). Most liability policies provide for defense costs to be paid in addition to policy limits (as this policy, prior to Endorsement 16, would have done). *Id.* "In an eroding policy, by contrast, the insurer's payments to defense counsel to defend the liability suit count against the policy limits." *Id.*

6

No. 14-20239

An insurance policy is a contract and subject to the general rules governing contract construction. *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Although an insurance policy is construed against the drafter (the insurance company), this rule is a rule of last, not first, resort. *Evergreen Nat'l Indem. Co. v. Tan it All, Inc.*, 111 S.W.3d 669, 676–77 (Tex. App. – Austin 2003, no pet.). First, a court must apply other rules of contract construction. Only if the result is that, after application of these rules, there is an ambiguity because there are two reasonable constructions of the language, does a court resort to contra proferentem. *Id.* at 678. "[A]n ambiguity does not exist simply because the parties interpret a policy differently." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

When a word is used in a contract without specifying a particular meaning, it is given its ordinary meaning in light of the ordinary custom and usage. *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 365 (5th Cir. 2002). Here, the term "expenses" is not otherwise defined. The parties do not cite any Texas authority on the meaning of this term in an insurance policy. However, it has long been the law in Texas that the term "expense" encompasses attorneys' fees in a wide variety of contexts. *See, e.g.*, *Mundy v. Knutson Constr. Co.*, 294 S.W.2d 371, 374 (Tex. 1956) ("Since the wording of [the surety] bond expressly provides for payment of 'all costs and expenses' incurred in the prosecution of a suit or suits . . . , we feel attorneys' fees so incurred was a proper measure of recovery . . . . An attorneys' fee for the prosecution of a suit is an 'expense' incurred."); *S.W. Nat'l Bank v. Employers' Indem. Corp.*, 12 S.W.2d 189, 190–91 (Tex. 1929) (holding that indemnity for "all expense" incurred on account of lawsuit on surety bond included attorneys' fees); *Emery Air Freight Corp. v. Gen. Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex. App. – Houston [14th Dist.] 1996, no writ) (finding

that the term "expenses" as used in an indemnity provision in a contract includes attorneys' fees), *disapproved of on other grounds by Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 670 & n.50 (Tex. 2008).

Giving it its ordinary meaning, when an insurer pays costs of defense, including attorneys' fees, that is an "expense" to the insurer.  Absent some indication that a different meaning is intended, we see no reason to deviate from this ordinary meaning of the term.

Turning to the question of whether "supplementary payments" erode the limits, Arch argues the rule of contract construction that specific endorsements govern over general language.  *See Starr Indem. & Liability Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 704 (5th Cir. 2013) (applying Texas law); *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App. – Dallas 1999, pet. denied); *Matthews v. Home Ins. Co.*, 916 S.W.2d 666, 669 (Tex. App. – Houston [1st Dist.] 1996, writ denied).  Applying that rule of construction, we conclude that the endorsement transforms the policy into an "eroding limits" policy.   The district court determined that the proper construction of these clauses is to create two policy limits: one for the indemnity obligation, which is satisfied by payment of settlements, judgments, and "supplementary payments" including defense costs, and one for the defense obligation, which is satisfied only by payment of settlements and judgments.  This construction reads the endorsement out of the policy as, logically, there can never be an end to the duty to defend unless the insurer pays the policy limits in indemnity payments.  In other words, the district court's construction means that, practically, the policy limit is not eroded by defense costs.   We conclude that this construction is not a reasonable construction of the policy after applying the rules of construction and, therefore, it does not create an ambiguity.  Because Arch's construction is the

only reasonable construction of the policy, we apply it. *CBI Indus.*, 907 S.W.2d at 521–22.

B. "Wrongful Exhaustion"

Separately, Amerisure also argued that the policy limits were not exhausted because Arch wrongfully paid for the toilet leak claim and the fire sprinkler claim. In Amerisure's view, these claims were not covered under the "products-completed" coverage because the apartment building was not "complete." Arch calls this the "wrongful exhaustion" claim. It is not altogether clear under what authority Amerisure (as an excess insurer arguing on behalf of a common insured) argues that amounts were "wrongfully" paid. Nor is it altogether clear how a court should evaluate such a claim under a policy with multiple insureds, one of which successfully demanded coverage for these claims and another of which now contends payments of the demanded sums should not have been made.

We conclude that it is unnecessary to plumb these depths because, even assuming arguendo that there is a cause of action for "wrongful exhaustion," the district court correctly held it does not apply here. We conclude that the reasons given by the district court in this regard are clear, and we need not address this argument further.

Accordingly, we AFFIRM the district court's judgment regarding the duty to indemnify, REVERSE the district court's judgment regarding the duty to defend, and RENDER judgment for Arch.