ACCEPTED
03-15-00256-CV
6679518
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/27/2015 11:56:27 AM
JEFFREY D. KYLE
CLERK

**CAUSE NO. 03-15-00256-CV**

In the Court of Appeals
For the Third Court of Appeals District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/27/2015 11:56:27 AM
JEFFREY D. KYLE
Clerk

**ADRIAN JAMES,**
*Appellant*,

**V.**

**KIRBY HISCOX**
*Appellee*.

Appeal from the County Court at Law #1,
Travis County, Texas
CAUSE NO. C-1-CV-14-008643
The Honorable Todd Wong and Eric Shepperd Presiding

**APPELLANT'S BRIEF**

JOHN W. ESCOVER
State Bar No. 24029539
401 Ranch Road 620 South, Suite 350
Austin, Texas 78734
Telephone:  512-263-0939
Facsimile:   512-263-0943
John@Escoverlaw.com
**COUNSEL FOR APPELLANT**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellant lists the following parties affected by this appeal, and their respective counsel:

| APPELLANT | APPELLEE |
|---|---|
| Adrian James | Kirby Hiscox |
| Trial and Appellate Counsel<br><br>John W. Escover<br>State Bar No. 24029539<br>401 Ranch Road 620 South, Suite 350<br>Austin, Texas 78734<br>Telephone:  512-263-0939<br>Facsimile:    512-263-0943<br>John@Escoverlaw.com | Trial and Appellate Counsel<br><br>Henry Novak<br>State Bar No. 15120000<br>11782 Jolleyville Road<br>Austin, Texas 78759<br>Telephone: 512 577-5380<br>Facsimile:  512 532-6008<br>Henry@henrynovak.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………………………………………..i

TABLE OF CONTENTS…………….……………………………………………….ii

    I.    STATEMENT OF CASE…………………....……………………………1

    II.    ISSUES PRESENTED…………………………………………………….2

    III.    STATEMENT OF FACTS...……………………………………………….3

    IV.    SUMMARY OF THE ARGUMENT…………………………………...4

    V.    ARGUMENT……………………………………………………………….6

        1. The trial court erred because Appellee failed to establish that
           there are no genuine issues of material fact.  The contract is
           subject to two or more reasonable interpretations creating a
           fact issue precluding summary judgment……………………………..6

        2. The trial court erred because it failed to indulge every
           reasonable inference in favor of Appellant and failed to
           resolve any doubts in Appellant's favor ……….………………….…..8

        3. The trial court erred because it failed to consider the entire
           writing in an effort to harmonize and give effect to all the
           provisions of the contract so that none will be rendered
           meaningless ……………………………………………….……….10

        4. The trial court erred because the contract is ambiguous, creating
           a fact issue on the parties' intent precluding summary
           judgment………………………………………………………………12

        5. The trial court erred because Appelle drafted the liquidated
           damage provision that he now attempts to avoid and under
           the contra proferentem doctrine, an ambiguous contract
           will be interpreted against its drafter……………….…..………….…14

    VI.    CONCLUSION AND PRAYER………………………………………...15

CERTIFICATE OF COMPLIANCE ..………………………...…………………………...18

CERTIFICATE OF SERVICE…………………………………...………….….…18

# TABLE OF AUTHORITIES

**CASES**

*Anglo-Dutch Petroleum v. Greenberg Peden*, 267 S.W.3d 454
(Tex. App. – Houston [14th] Dist, 2008)……………………………………...12

*Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803
(Tex.App. – Dallas, 1999 no-pet)………………………………...………...14

*City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W. 2d 515
(Tex. 1968)………………………………………...……………………10

*Coker v. Coker,* 650 S.W.2d 391
(Tex. 1983)……………………………………………………...……8

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587
(Tex. 1996)……………………………………………………12

*Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669
(Tex.App.-Austin 2003, no pet.)……………………………………...12

*Haase v. Glazner*, 62 S.W.3d 795
(Tex. 2001)…………………………………………….……………….6

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223
(Tex. 2003)………………………………………………………12

*Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193
(Tex. 1962)………………………………………………………10

*Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546
(Tex. 1985)…………………………………………………………..8-9

*R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517
(Tex. 1980)…………………………………………………………10

*Universal C.I.T. Credit Corp. v. Daniel,*243 S.W.2d 154
(Tex. 1951)…………………………………………………………...10

*Valence Operating Co. v. Dorsett*, 164 S.W. 656
   (Tex. 2005)………………………………………………………….…...…14

**STATUTES**

Tex. R. Civ. P. 166a(c)…………………………………………..………...6

# I. STATEMENT OF CASE

On November 19, 2012, Appellee and Appellant entered into a personal services contract wherein Appellee would provide acting services to Appellant's production company. Appellant and Appellee negotiated and modified Appellee's personal services contract to include, *inter alia*, a discounted daily shoot rate from $1,500 per day to $1,000, in exchange for Appellant "guaranteeing" 20 minimum shoot days, equivalent to $20,000. The parties also negotiated a liquidated damage clause "if" 20 shoot dates were not met. "In the event, 20 shoot days are not met within the first four months, Appellee's daily rate would revert to $1,500 and be paid retroactively for all completed shoot days." **[CR 19-21]** Appellee performed two shoot days and was initially compensated $2,000 for his services. Appellant later tendered an additional $1,000. **[CR-16]** On August 31, 2013, Appellee sent a demand letter contending he was entitled to an additional $18,000 pursuant to the shoot day guarantee. **[CR-32]** Appellent rejected Appellee's demand. Appellee filed suit in Justice of the Peace Court seeking $10,000 in damages and attorney's fees. The justice court dismissed the suit on lack of jurisdiction. Appellee then filed suit in County Court contending that he was now entitled to an additional $28,000. **[CR-17]** Appellee and Appellant filed competing summary judgments each contending the contract was unambiguous. The Honorable Todd Wong granted Appellee's summary judgment and sustained Appellant's Objections to

1

Appellee's Affidavit as inadmissible parole evidence and awarded Appellee $30,000 less $2,000 already paid, for a total award of $28,000, plus attorney's fees and costs. **[CR46-48]** Appellant timely filed his Motion for New Trial and Reply contending the guarantee contained a liquidated damages clause creating Appellee's sole and exclusive remedy and that Appellee's interpretation ignored Paragraph 2B that states Appellee's pay scale when cancellation notices are given 24, 48, and 72 hours in advance and that Appellee was entitled to his normal rate of $1,500 for the two completed shoot days, or in other words $3,000. **[CR-49 & 78]** The Honorable Eric Shepperd denied Defendant's Motion for New Trial. **[CR-199]**

## II.    ISSUES PRESENTED

1.    The trial court erred because Appellee failed to establish that there are no genuine issues of material fact and that the contract is subject to two or more reasonable interpretations creating a fact issue precluding summary judgment.

2.    The trial court erred because it failed to indulge every reasonable inference in favor of Appellant and it failed to resolve any doubts in Appellant's favor.

3.    The trial court erred because it failed to consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.

4.    The trial court erred because the contract is ambiguous, creating a fact issue on the parties' intent precluding summary judgment and under the contra proferentem doctrine, an ambiguous contract will be interpreted against its drafter.

5.    The trial court erred because Appellee drafted the liquidated damage provision that he now attempts to avoid.

2

Appellant's Brief

## III.    STATEMENT OF FACTS

Appellee and Appellant entered into a personal services contract crafted by Appellee.    Appellee and Appellant negotiated and modified some specific contractual terms and conditions that are in dispute and were the subject of competing motions for summary judgment.   Appellant hired Appellee to provide professional acting services to be compensated pursuant to the terms and conditions outlined in Paragraphs 2B and 4 of the Agreement.   Appellant utilized Appellee's acting services during two days of shooting and initially paid Appellee $2,000.00, and thereafter Appellant tendered an additional $1000 in compliance with the Agreement that Appellee subsequently rejected.

Paragraph 2B.:

> **B. Cancellation of Shoot Dates:**  If a scheduled shoot date is cancelled with less than a 24-hour notice given to the Actor, the Actor shall be paid at the full-day rate.  If a scheduled shoot date is cancelled and notice is given to the Actor between 24 and 48 hours prior to the Shoot date, the Actor shall be paid at 50% of the full-day rate.  If a scheduled Shoot Date is cancelled and notice is given to the Actor between 48 and 72 hours prior to the Shoot Date, the Actor shall be paid 25% of the full-day rate. No rate will be paid to the Actor for Shoot Date cancellations given to the Actor at least 72 hours in advance of a scheduled Shoot Date.

Paragraph 4:

> **4. MINIMUM GUARANTEED SHOOT DAYS** In exchange for Actor's agreement to reduce his fees to those stated above, the Producer guarantees to Actor a minimum of twenty (20) Shoot Days of filming, equivalent to $20,000.00 to be paid to Actor. In the event that the twenty (20) Shoot Days are not met within the first four (4) months of the Agreement, the effective rate of $1,000.00 per day as stated in Paragraph

2.A.i. above will revert to $1,500.00 per day rate and be paid retroactively for all completed Shoot Days and become due and payable within fourteen days after the end of the fourth (4th) month of this Agreement.[1]

On August 31, 2013, Appellee first contended that he was entitled to an additional $18,000 for a total of payment under the Contract of $20,000.[2] At the summary judgment hearing Appellee then contended that he was entitled to an additional $28,000 (18 more days @ $1,500/day, plus $500 per day in addition to the $1,000 already paid for the 2 days actually filmed) for a total payment under the Contract of $30,000.

## IV. SUMMARY OF ARGUMENT

The trial court erred when it failed to apply any summary judgment standard or rule of contractual interpretation when it granted Appellee's Motion for Summary Judgment and denied Appellant's Motion for New Trial. Every summary judgment standard and contractual rule of construction mandates that the trial court should have denied Appellee's Motion for Judgment and should have granted Appellant's Motion for New Trial. Or in the alternative, it should have granted Appellant's Motion for Summary Judgment, or at a minimum, denied both motions for summary judgment.

---

[1] *See* Clerk's Record and Brief Appendix; Plaintiff's Motion for Summary Judgment Exhibits @ P.1-3; Appellee's *Factor of One Contract*.
[2] *See* Clerk's Record and Brief Appendix; Plaintiff's Motion for Summary Judgment Exhibits @ P.14; Appellee's August 31, 3013 Demand Letter.

4

Appellant's Brief

Appellee's contract that he crafted, negotiated, and modified provided his sole exclusive remedy in the event of a breach by Appellant that Appellee would not be paid $1,000 for all completed shoot days, but compensated at his regular rate of $1,500 per day.

Appellee has even read and asserted differing interpretations of his own contract. On August 31, 2013, Appellee contended in his pre-suit demand letter that he was entitled to an additional $18,000 not an additional $28,000. "Mr. Hiscox advised me that you paid him the agreed fee of $2,000, for those two days, but you failed to pay him the balance of the $18,000 fee guaranteed to him. Accordingly, demand is made upon you for payment of the $18,000 due Mr. Hiscox under the terms of the Contract."

Appellee's multiple positions regarding his own contract clearly evidences the inherent ambiguity in his own mind of the Agreement's pay terms and conditions, and mandates that the trial court erred when it granted summary judgment and awarded $28,000, an amount that no reasonable interpretation of the Agreement supports. Therefore, the trial court erred when it granted Appellee's Motion for Summary Judgment, when it denied Appellant's Motion for Summary Judgment, and denied Appellant's Motion for New Trial.

Appellant's Brief

## V. ARGUMENT

**1. THERE ARE GENUINE ISSUES OF MATERIAL FACT. THE CONTRACT IS SUBJECT TO TWO OR MORE REASONABLE INTERPRETATIONS CREATING A FACT ISSUE ON THE PARTIES' INTENT PRECLUDING SUMMARY JUDGMENT**

A summary judgment under Rule of Civil Procedure 166a(c) is properly granted only when a movant establishes that there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001).

The contradictory language of Paragraph 4 is susceptible to at least two reasonable interpretations including but not limited to how the actual computation of damages should be calculated neither of which are the Appellee's or trial court's unreasonable interpretation.

In short, under the trial court's and Appellee's latest interpretation of the Paragraph 4, Appellant guaranteed to pay Appellee 20 shoot days equivalent to $20,000, and if Appellee didn't actually work 20 days for $20,000 by performing acting services, Appellee would then be entitled to $30,000, despite only being guaranteed $20,000? Of course what Appellee and the trial court have done is they have shoehorned two separate clauses with separate meanings and terms within Paragraph 4 to reach their mathematical equation while completely disregarding earlier words and clauses in Paragraph 2B that are associated with the contractual pay scales. The trial court held that Appellee was guaranteed 20 shoot days at

$1,500 a day for a total of $30,000 even though the express language without the application of the liquidated damage clause states a $20,000 guarantee.

It is undisputed that 20 shoot dates were not met and it is undisputed that there were only two completed shoot dates. Therefore a more reasonable calculation based upon a plain reading of the language is, *assuming arguendo*, if you accept Appellee's position that there was an absolute guarantee of 20 shoot days, that for the two completed shoot dates Appellee is entitled to $3,000, leaving 18 guaranteed shoot dates remaining at the $1,000 per date for a total maximum payment of $21,000, not $30,000, but even this position is not within the plain reading of the contract, and it ignores the express provision of $20,000, the liquidated damage clause, and Paragraph 2B.

Neither of the previous arguments are the most reasonable since the express language of the clause specifically states a contingency if 20 shoot days are not met. "In the event twenty (20) Shoot Days are not met," within the first four (4) months of the Agreement, the effective rate will revert to $1,500 per day rate and be paid "***retroactively for all completed Shoot Days***..." (emphasis added) The math alone dictates that summary judgment award was improper. Furthermore, the plain language of the liquidated damage clause drafted by Appellee unequivocally states the contingency; if 20 shoot dates are not met, Appellee will be paid $1,500 per day, retroactively, for all completed shoot dates, or in other words $3,000.

7

But of course none of the previous interpretations are reasonable or the position first espoused by Appellee. On August 31, 2013, Appellee contended in a pre-suit demand letter crafted by his trial and appellate counsel that, "[M]r. Hiscox advised me that you paid him the agreed fee of $2,000, for those two days, but you failed to pay him the balance of the $18,000 fee guaranteed to him.3 Accordingly, demand is made upon you for payment of the $18,000 due Mr. Hiscox under the terms of the Contract.

***When a contract contains an ambiguity, the granting of a motion for summary judgment or directed verdict is improper because the intent of the contracting parties is an issue of fact***. (emphasis added) *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983). If you are buying what the Apellee is selling even Appellee doesn't know what his intent was at the time the Contract was executed then surely it is an impossibility for the trial court to insert its opinion of what Appellee knew at the time the contract was negotiated, modified, and executed.

2. **THE TRIAL COURT FAILED TO INDULGE EVERY REASONABLE INFERENCE IN FAVOR OF APPELLANT AND FAILED TO RESOLVE ANY DOUBTS IN APPELLANT'S FAVOR**

In deciding whether there is a disputed material fact precluding summary judgment, every reasonable inference must be indulged in favor of the non-movant

---

3 *See* Clerk's Record and Brief Appendix; Plaintiff's Motion for Summary Judgment Exhibits @ P.14; Appellee's August 31, 2013 Demand Letter.

Appellant's Brief

and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex. 1985).

Appellant contends the liquidated damage provision is controlling and clear. Although he concedes an argument, although strained and unreasonable, can be made as demonstrated above, that there is a doubt as to the parties' intentions and what the proper measure of damages would be if 20 shoot dates were not met. But the analysis clearly begs the question, "why would Appellant supposedly guarantee to pay Appellee $20,000, and if Appellee did not have to work then Appellee would be paid $30,000? Where is the benefit of the bargain?

The bargain negotiated is that Appellant would get a discount if Appellee actually works at least 20 days. If so, rather than paying Appellee $30,000 for those services, Appellee would receive $20,000, a fact confirmed on August 31, 2013 in Appellee's demand letter. However, the most reasonable interpretation is that if 20 shoot days were not completed within the first four months, Appellant would get no discount and Appellant must pay Appellee at his regular rate of $1,500 rather than $1,000 for all completed shoot days. The ambiguities don't end there, what if Appellee worked 21 days but the 21st day came after the four month mark? Does Appellee get paid $1,000 or $1,500? Contractual construction mandates that since Appellee drafted the contract all inferences must be indulged in Appellant's favor but were clearly not at the trial court level.

9

**3.** **THE TRIAL COURT FAILED TO CONSIDER THE ENTIRE WRITING IN AN EFFORT TO HARMONIZE AND GIVE EFFECT TO ALL THE PROVISIONS OF THE CONTRACT SO THAT NONE WOULD BE RENDERED MEANINGLESS**

"We must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 243 S.W.2d 154, 158 (Tex. 1951). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Myers v. Gulf Coast Minerals Mgmt. Corp*., 361 S.W.2d 193, 196 (Tex. 1962). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc*., 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co*., 432 S.W.2d 515, 518 (Tex. 1968).

In addition to the analysis contained in subheading two above, the trial court also failed to harmonize Paragraph 2B and Paragraph 4. Paragraph 2B states,

> If a scheduled shoot date is cancelled with less than a 24-hour notice given to the Actor, the Actor shall be paid at the full-day rate. If a scheduled shoot date is cancelled and notice is given to the Actor between 24 and 48 hours prior to the Shoot date, the Actor shall be paid at 50% of the full-day rate. If a scheduled Shoot Date is cancelled and notice is given to the Actor between 48 and 72 hours prior to the Shoot Date, the Actor shall be paid 25% of the full-day rate. No rate will be paid to the Actor for Shoot Date cancellations given to the Actor at least 72 hours in advance of a scheduled Shoot Date.

> There is no evidence regarding if and when notice was given, and if it was,

was it given 24, 48, or greater than 72 hours in advance of the scheduled shoot day.

10

Appellant's Brief

Furthermore, whether 2B was actually invoked or not is irrelevant to contractual interpretation. But its presence absolutely precludes summary judgment because its plain meaning directly contradicts Appellee's latest position and the trial court's ruling and award. 2B's express provisions precludes there being an absolute guarantee of 20 shoot dates or $20,000 and is most consistent with Appellant's position that Appellee is only entitled to two days of pay at $1,500. Its invocation or not has no bearing on interpretation, but it is a factual determination that clearly precludes summary judgment because it affects whatever mathematical calculation that is ultimately applied.

Therefore and pursuant to 2B, Appellee is not entitled to any pay for any shoot days cancelled beyond the 72 hour mark and he may be entitled to partial payments for days cancelled within 48 or 24 hours. The trial court's granting Appellee's Motion for Summary Judgment has rendered 2B meaningless. It is undisputed that 2B was crafted by Appellee and therefore any discrepancies must be construed against Appellee. At a minimum when Paragraphs 2B and 4 are construed together, it creates a fact issue precluding summary judgment. If properly construed under the rules of construction, 2B must be given preference since it is earlier in the contract than Paragraph 4, and all reasonable inferences are to be resolved in Appellant's favor. Therefore if paragraphs 2B and 4 are properly

Appellant's Brief

construed and applied, Appellee is only entitled to $3,000 for two completed shoot dates.

**4.** **THE TRIAL COURT ERRED BECAUSE THE CONTRACT IS AMBIGUOUS, CREATING A FACT ISSUE ON THE PARTIES' INTENT PRECLUDING SUMMARY JUDGMENT AND UNDER THE CONTRA PROFERENTEM DOCTRINE, AN AMBIGUOUS CONTRACT WILL BE INTERPRETED AGAINST ITS DRAFTER**

A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd*., 940 S.W.2d 587, 589 (Tex. 1996). On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003). Under the contra proferentem doctrine, an ambiguous contract will be interpreted against its drafter. *See, e.g., Evergreen Nat'l Indem. Co. v. Tan It All, Inc*., 111 S.W.3d 669, 677 (Tex.App.-Austin 2003, no pet.)(if insured's interpretation of ambiguous policy provision is reasonable, it will be adopted even if insurer's interpretation is objectively more sensible, as long as insured's construction is not unreasonable). Courts employ this doctrine as a device of last resort when construing ambiguous contracts; it essentially operates as a tie-breaking device to prevent arbitrary decisions. *Id. Anglo-Dutch Petroleum v. Greenberg Peden*, 267 S.W.3d 454 (Tex. App. – Houston [14th] Dist, 2008).

Appellant's Brief

Despite the rules of construction and summary judgment law, it is clear from the trial court's granting Appellee's Motion for Summary Judgment and denying Appellant's Motion for New Trial that the ambiguities that permeate Appellee's contract where strictly construed against Appellant. The rules of contractual interpretation dictate that any contractual ambiguities must be construed against Appellee drafter.

The first sentence of Appellee's contract Paragraph 4 is directly modified by the second sentence.

> In exchange for Actor's agreement to reduce his fees to those stated above, the Producer guarantees to Actor a minimum of twenty (20) Shoot Days of filming, equivalent to $20,000.00 to be paid to Actor.

The second sentence,

> In the event that the twenty (20) Shoot Days are not met within the first four (4) months of the Agreement, the effective rate of $1,000.00 per day as stated in Paragraph 2.A.i. above will revert to $1,500.00 per day rate and be paid retroactively for all completed Shoot Days and become due and payable within fourteen days after the end of the fourth (4th) month of this Agreement.

The second sentence spells out contingency compensation if 20 shoot days are not completed. Rather than Actor being paid $1,000 per shoot days completed, there would be no discount, but the Actor would be paid his normal rate ($1,500) for all completed shoot days. The court has effectively ruled that there was a guarantee of $30,000 when no such provision exists or can be inferred from the contract and furthermore this reasoning completely ignores Paragraph 2B, as stated

13

above. If all reasonable inferences and indulgences had been construed in Appellant's favor the rules of construction dictate that Appellee is only entitled to $3,000 for the two completed shoot dates at $1,500 per day, and certainly not guaranteed $30,000.

There is no doubt and the case law is clear if ambiguities exist then summary judgment is improper and under the rules of construction Appellant's position that Appellee is only entitled to $3,000 must be given deference and resolved in his favor.

**5. THE TRIAL COURT ERRED BECAUSE APPELLEE DRAFTED THE LIQUIDATED DAMAGE PROVISION THAT HE NOW ATTEMPTS TO AVOID**

"Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations…." *Valence Operating Co. v. Dorsett*, 164 S.W. 656, 644 (Tex. 2005). "Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Id*.

Courts will enforce a liquidated damages clause only on the presence of two conditions: (1) the harm caused by the breach must incapable or difficult of estimation; and (2) the amount of liquidated damages must be a reasonable forecast of just compensation. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 810 (Tex.App. – Dallas, 1999 no-pet).

Appellant's Brief

The "[I]n the event" clause clearly indicates a contemplated contingency and as such is an enforceable liquidated damage provision that fixes the just compensation in advance for the failure to perform a specific contractual obligation. There is no evidence that Appellee was precluded, or not, from seeking other acting work or any work during the pendency of this contractual arrangement. Therefore it is impossible to calculate or even predict his potential monetary damages based upon work he claims he might have or might not have been engaged to perform, for what duration, and at what rate. By definition this makes his losses impossible to predict or calculate, satisfying the first prong.

Appellee cannot contend that the liquidated damage provision is not a reasonable forecast of damages since it states he would be paid his regular rate of $1,500 per completed shoot days. His contract, that he modified, states that his compensation, ***in the event*** *of a breach*, will revert to his normal daily rate, and he will be compensated for all completed shoot dates at $1,500 per day. Therefore, the second element of a liquidated damage provision that the amount be just, is satisfied as well making the clause an enforceable liquidated damage clause.

## VI. CONCLUSION AND PRAYER

There is not a single rule of contractual interpretation or a summary judgment standard that Appellee can articulate that supports his strained and

Appellant's Brief

unreasonable readings or multiple interpretations of the contract, and consequently the trial court's granting of summary judgment.

Appellant has demonstrated that multiple grounds exist mandating that the trial court should have denied Appellee's Motion for Summary Judgment and granted Appellant's Motion for New Trial including; 1) Appellee failed to establish that there are no genuine issues of material fact, and that Appellee was entitled to judgment as a matter of law; 2) There are disputed material facts precluding summary judgment, and this court failed to indulge every reasonable inference in favor of Appellant and failed to resolve any doubts in Appellant's favor; 3) The court failed to consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless; 4) The granting of summary judgment was improper because after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent; and 5) Since the contract is ambiguous under the contra proferentem doctrine, the ambiguous contract must be interpreted against its drafter, and in this case Appellee. There is no doubt and the case law is clear if ambiguities exist then summary judgment is improper and under the rules of construction Appellant's position of $3,000 is the most reasonable and must be given deference. There is no rational reading of the Contract that entitles Appellee

16

Appellant's Brief

to $30,000 even Appellee's own first position regarding the breach belies the trial court's judgment and award.

Accordingly, Appellant respectfully requests that this court reverse the trial court's judgment and enter an order granting Appellant's Motion for Summary Judgment, or in the alternative reverse and remand, and for such other further relief to which Appellant shows himself justly entitled.

Respectfully submitted,

**THE LAW OFFICES OF JOHN W. ESCOVER, LLLP**

_____
JOHN W. ESCOVER
State Bar No. 24029539
401 Ranch Road 620 South, Suite 350
Austin, Texas 78734
Telephone:  512-263-0939
Facsimile:   512-263-0943
John@Escoverlaw.com
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limit of Tex. R. App. P. 9.4(i)(2)(B) because this brief contains 4,153 words, excluding the parts of the Brief exempted by Tex. R. App. P. 9.4(i)(1).

_____
John W. Escover

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing legal instrument has been served on all parties of record via facsimile and/or electronic service on the 27th day of August, 2015 as follows:

***Electronic Service or Via Facsimile: (512) 532-6008***
Henry Novak
11782 Jolleyville Rd., Suite 210
Austin, TX 78755

_____
John W. Escover

Appellant's Brief

## APPENDIX

1.  Plaintiff's Motion for Summary Judgment Exhibits;

2.  Trial Court's Order Granting of Summary Judgment and Sustaining Objection to Plaintiff's affidavit;

3.  Trial Court's Order Denying Defendant's Motion for New Trial.



This Agreement (herein after the "Agreement") is entered into this November 19, 2012 by and between Kirby M. Hiscox, (herein after the "Actor") and Adrian James (herein after the "Producer"). The parties hereby agree as follows:

## 1. ACTOR'S SERVICES

Actor shall be available and shall provide to the Producer professional acting services (herein after "Acting Services") for Producer's **Entrepreneur Archive** project, as outlined in Paragraphs 1.A. below. At the request of the Producer, Actor shall be available and shall provide to the Producer **Optional Hourly or Retained Consulting and Collaboration Services** as outlined in Paragraph 1.B. below.

      **A. Professional Non-Broadcast Acting Services for private distribution shall include:** On-Camera, Voice-Over, Internet, DVD, Print Collateral;

      **B. Optional Hourly or Retained Consulting and Collaboration shall include:** Pre-Shoot Day meetings and conference calls for review and preparation, Concept Development and Assistance, Business Consulting, Executive Coaching.

## 2. CONSIDERATION

      **A. Rate:** In consideration for the Acting Services to be performed by Actor under this Agreement, the Producer shall pay Actor as follows:

      i) Day Rate Local (Local Rate designated as the Austin, Texas, metropolitan area): $1,000.00 for up to eight (8) hours of work;

      ii) Extended Day Hourly Rate Local: $150.00 per hour for work beyond the initial eight (8) hours;

      iii) Day Rate Non-Local: $1,500.00 for up to eight (8) hours of work, including an additional half-day travel rate of $750.00 for travel to the Shoot location and an additional half-day travel rate of $750.00 for travel returning from the Shoot location;

      iv) Extended Day Hourly Rate Non-Local: $175.00 per hour for work beyond the initial eight (8) hours;

      v) Pre-Shoot Day meetings for review and preparation: $175.00 per hour, with a two (2) hour minimum;

**EXHIBIT A**

1

vi) Optional Hourly Consulting and Collaboration: $175.00 per hour

vii) Optional Retained Consulting and Collaboration: 15 hours per month at $2,000.00, 20 hours per month at $2,500.00 per month, 25 hours per month at $3,000.00 per month, 30 hours per month at $3,500.00 per month, 40 hours per month at $4,000.00.

**B. Cancellation of Shoot Dates:** If a scheduled Shoot Date is cancelled with less than a 24-hour notice given to the Actor, the Actor shall be paid at the full-day rate. If a scheduled Shoot Date is cancelled and notice is given to the Actor between 24 and 48 hours prior to the Shoot Date, the Actor shall be paid at 75% of the full-day rate. If a scheduled Shoot Date is cancelled and notice is given to the Actor between 48 and 72 hours prior to the Shoot Date, the Actor shall be paid at 50% of the full-day rate. No rate will be paid to the Actor for Shoot Date cancellations given to the Actor at least 72 hours in advance of a scheduled Shoot Date.

**C. Payments Due:** Payments for Acting Services are due and payable within one (1) week of completion of daily filming. Payments for Optional Hourly Consulting and Collaboration Services are due and payable on the first (1st) and fifteenth (15th) of the month. Payments for Optional Retained Consulting and Collaboration are due and payable in advance on the first (1st) of the month.

**3. EXPENSES** The Producer will provide Actor with transportation to and from Non-Local Shoot locations, and provide Actor with lodging, meals, and any necessary per-diem for incidentals associated with the travel. Expenses beyond those stated above, if necessary for travel, will be agreed upon prior to expenditure.

**4. MINIMUM GUARANTEED SHOOT DAYS** In exchange for Actor's agreement to reduce his fees to those stated above, the Producer guarantees to Actor a minimum of twenty (20) Shoot Days of filming, equivalent to $20,000.00 to be paid to Actor. In the event that the twenty (20) Shoot Days are not met within the first four (4) months of the Agreement, the effective rate of $1,000.00 per day as stated in Paragraph 2.A.i. above will revert to a $1,500.00 per day rate and be paid retroactively for all completed Shoot Days, and become due and payable within fourteen days after the end of the fourth (4th) month of this Agreement.

**5. INDEPENDENT CONTRACTOR** Nothing herein shall be construed to create an employer-employee relationship between the Producer and Actor. Actor is an independent contractor and not an employee of the Producer or any of its subsidiaries or affiliates. It is understood that the Producer will not withhold any amounts for payment of taxes from the compensation of Actor hereunder. Actor will not represent to be an employee of the Producer.

**6. CONFIDENTIALITY** In the course of performing Acting Services, Consultation, or Collaboration, the parties recognize that Actor may come in contact with or become familiar with information which the Producer or its subsidiaries or affiliates may consider confidential. This information may include, but is not limited to, information pertaining to the Producer's business model or operation. Actor agrees to keep all such information confidential and further agrees not to discuss or divulge such information to anyone other than the Producer, the Producer's personnel, or Producer's designees.

**EXHIBIT A**

2

**7. TERM** This Agreement shall commence on November 19, 2012 and shall terminate on May 18, 2013. **The Producer may, at its option, renew this Agreement on a month-to-month basis under the same terms and conditions as set forth herein by giving written notice to Actor of such intent to renew for each additional monthly Term on or before fifteen (15) days prior to expiration of the current Term.**

**8. NOTICE** Any notice or communication permitted or required by this Agreement shall be deemed effective when delivered by email, or personally delivered or deposited, postage prepaid, in the first class mail of the United States properly addressed to the appropriate party at the address set forth below:

A. **Notices to Actor:** Kirby M. Hiscox, 2433 Cloud Peak Lane, Round Rock, Texas, 78681.

B. **Notices to the Producer:** Adrian James, 6702 Troll Haven, Austin, Texas, 78746.

**9. MISCELLANEOUS**

A. **Entire Agreement and Amendments.** This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral. No amendment or extension of the Agreement shall be binding unless in writing and signed by both parties.

B. **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of Actor and the Actor's successors and assigns, and the Producer and the Producer's successors and assigns.

C. **Governing Law, Severability.** This Agreement shall be governed by the laws of the State of Texas. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

WHEREFORE, the parties have executed this Agreement as of the date first written above.

Adrian James

Signed: _____     Dated: _____11/19/2012_____

Name Printed: _____Adrian James_____

Kirby M. Hiscox

Signed: _____     Dated: ___Nov 19, 2012___

Name Printed: _____KIRBY M. HISCOX_____

**<span style="color:red">EXHIBIT A</span>**

3

NO. C-1-CV-14-008643

| KIRBY HISCOX, | § | IN THE COUNTY COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| ADRIAN JAMES, | § | |
| | § | |
| Defendant | § | COURT NO. ONE |

**AFFIDAVIT IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

| STATE OF TEXAS | § |
| | § |
| COUNTY OF WILLIAMSON | § |

BEFORE ME, THE UNDERSIGNED AUTHORITY, personally appeared Kirby Hiscox who, upon being duly sworn by me, deposed and stated as follows:

"My name is Kirby Hiscox. I am over the age of 18 years. I have never been convicted of a felony. I am fully competent to make this affidavit. The facts hereinafter set forth are within my personal knowledge and are true and correct.

"From 2010 through 2012, I was a part-time freelance professional actor.

"On November 19, 2012, I entered into a written contract with Adrian James (the "Defendant"), who at that time lived at 6702 Troll Haven, Austin, Texas, 78746, to act in and be the host of a series of filmed interviews to be by Defendant for a business called "Entrepreneur Archive" he was developing that was to be a resource/membership website for entrepreneurs. Defendant sought and received my professional input and assistance in the development of the Entrepreneur Archive concept.

"I had worked as a professional actor and host for Defendant on several of his prior productions for various business ventures he developed over the two years previous to the Entrepreneur Archive project and he was pleased with the acting work I had done on those projects.

"In November 2012 the Defendant contacted me and asked if I would be interested in being the host of the Entrepreneur Archive project. He told me he planned on shooting 30 or more videos over a six-month period of time.

"Because of his prior employment of me he was familiar with my $1,500 per day fee structure. He asked me if I would be willing to reduce my daily fee to $1,000 if (i) he guaranteed me a minimum of 20 days of filming over the next six-months, and (ii) if he didn't provide me with 20 days of filming at $1,000 a day within the first four months of the contract term, he would pay my full daily rate of $1,500 for all 20 days of filming, whether those days were filmed within the first four months or not. Under this arrangement, Defendant would save $10,000 by completing all 20 shooting days within the first four months and I would be released from further obligation under the contract after only four months and free to pursue other acting contracts.

"I accepted his offer and our agreement was reduced to writing in the document that attached to this Affidavit as Exhibit A (the "Contract"). A copy of the Contract is also attached to Plaintiff's Motion for Summary Judgment as Exhibit A. Both copies of the Contract are true and accurate copies of the original. We executed the Contract on November 19, 2012.

"Paragraph 7 of the Contract provides for the six-month term of the Agreement; Paragraph 2 A. (i) sets forth the reduced daily rate of $1,000; and Paragraph 4 contains the guarantee of 20 days of shooting and the four-month contingent daily rate clause.

"I rendered the first two days of filming to the Defendant before the end of the month of December 2012, but he never provided me with any additional shooting days. I remained obligated by the terms of the Contract to be ready to film the additional days on a phone call's notice from the Defendant, so I was unable to seek out and commit to other acting opportunities during the remainder of the six-month term of the Contract. I did, in fact, remain ready, willing, and able to render the remaining 18 days of filming called for in the Agreement through May 2013.

"The Defendant paid me $2,000 for the two days of filming, and another $400 for wardrobe fitting fees and for consulting fees in assisting him with the Entrepreneur Archive concept. He has paid me nothing further.

"The Defendant remains indebted to me for $28,000, accounted for as follows: (a) 18 days of filming at $1,500 per day for a total of $27,000, and (b) $500 a day for each of the two days of filming I rendered ($3,000 at the retroactive rate of $1,500 a day, less the $2,000 Defendant paid) amounting to $1,000."

Executed on November 14, 2014.

_____
Kirby Hiscox

SUBSCRIBED AND SWORN TO before me by Kirby Hiscox on November 14, 2014.

_____
Notary Public, State of Texas

ELIZABETH ANN TEST
Notary Public
STATE OF TEXAS
My Comm. Exp. April 1, 2017



This Agreement (herein after the "Agreement") is entered into this November 19, 2012 by and between Kirby M. Hiscox, (herein after the "Actor") and Adrian James (herein after the "Producer"). The parties hereby agree as follows:

## 1. ACTOR'S SERVICES

Actor shall be available and shall provide to the Producer professional acting services (herein after "Acting Services") for Producer's **Entrepreneur Archive** project, as outlined in Paragraphs 1.A. below. At the request of the Producer, Actor shall be available and shall provide to the Producer **Optional Hourly or Retained Consulting and Collaboration Services** as outlined in Paragraph 1.B. below.

      **A. Professional Non-Broadcast Acting Services for private distribution shall include:** On-Camera, Voice-Over, Internet, DVD, Print Collateral;

      **B. Optional Hourly or Retained Consulting and Collaboration shall include:** Pre-Shoot Day meetings and conference calls for review and preparation, Concept Development and Assistance, Business Consulting, Executive Coaching.

## 2. CONSIDERATION

      **A. Rate:** In consideration for the Acting Services to be performed by Actor under this Agreement, the Producer shall pay Actor as follows:

      i) Day Rate Local (Local Rate designated as the Austin, Texas, metropolitan area): $1,000.00 for up to eight (8) hours of work;

      ii) Extended Day Hourly Rate Local: $150.00 per hour for work beyond the initial eight (8) hours;

      iii) Day Rate Non-Local: $1,500.00 for up to eight (8) hours of work, including an additional half-day travel rate of $750.00 for travel to the Shoot location and an additional half-day travel rate of $750.00 for travel returning from the Shoot location;

      iv) Extended Day Hourly Rate Non-Local: $175.00 per hour for work beyond the initial eight (8) hours;

      v) Pre-Shoot Day meetings for review and preparation: $175.00 per hour, with a two (2) hour minimum;

**EXHIBIT A**

1

vi) Optional Hourly Consulting and Collaboration: $175.00 per hour

vii) Optional Retained Consulting and Collaboration: 15 hours per month at $2,000.00, 20 hours per month at $2,500.00 per month, 25 hours per month at $3,000.00 per month, 30 hours per month at $3,500.00 per month, 40 hours per month at $4,000.00.

**B. Cancellation of Shoot Dates:** If a scheduled Shoot Date is cancelled with less than a 24-hour notice given to the Actor, the Actor shall be paid at the full-day rate. If a scheduled Shoot Date is cancelled and notice is given to the Actor between 24 and 48 hours prior to the Shoot Date, the Actor shall be paid at 75% of the full-day rate. If a scheduled Shoot Date is cancelled and notice is given to the Actor between 48 and 72 hours prior to the Shoot Date, the Actor shall be paid at 50% of the full-day rate. No rate will be paid to the Actor for Shoot Date cancellations given to the Actor at least 72 hours in advance of a scheduled Shoot Date.

**C. Payments Due:** Payments for Acting Services are due and payable within one (1) week of completion of daily filming. Payments for Optional Hourly Consulting and Collaboration Services are due and payable on the first (1st) and fifteenth (15th) of the month. Payments for Optional Retained Consulting and Collaboration are due and payable in advance on the first (1st) of the month.

**3. EXPENSES** The Producer will provide Actor with transportation to and from Non-Local Shoot locations, and provide Actor with lodging, meals, and any necessary per-diem for incidentals associated with the travel. Expenses beyond those stated above, if necessary for travel, will be agreed upon prior to expenditure.

**4. MINIMUM GUARANTEED SHOOT DAYS** In exchange for Actor's agreement to reduce his fees to those stated above, the Producer guarantees to Actor a minimum of twenty (20) Shoot Days of filming, equivalent to $20,000.00 to be paid to Actor. In the event that the twenty (20) Shoot Days are not met within the first four (4) months of the Agreement, the effective rate of $1,000.00 per day as stated in Paragraph 2.A.i. above will revert to a $1,500.00 per day rate and be paid retroactively for all completed Shoot Days, and become due and payable within fourteen days after the end of the fourth (4th) month of this Agreement.

**5. INDEPENDENT CONTRACTOR** Nothing herein shall be construed to create an employer-employee relationship between the Producer and Actor. Actor is an independent contractor and not an employee of the Producer or any of its subsidiaries or affiliates. It is understood that the Producer will not withhold any amounts for payment of taxes from the compensation of Actor hereunder. Actor will not represent to be an employee of the Producer.

**6. CONFIDENTIALITY** In the course of performing Acting Services, Consultation, or Collaboration, the parties recognize that Actor may come in contact with or become familiar with information which the Producer or its subsidiaries or affiliates may consider confidential. This information may include, but is not limited to, information pertaining to the Producer's business model or operation. Actor agrees to keep all such information confidential and further agrees not to discuss or divulge such information to anyone other than the Producer, the Producer's personnel, or Producer's designees.

**EXHIBIT A**

2

**7. TERM** This Agreement shall commence on November 19, 2012 and shall terminate on May 18, 2013. **The Producer may, at its option, renew this Agreement on a month-to-month basis under the same terms and conditions as set forth herein by giving written notice to Actor of such intent to renew for each additional monthly Term on or before fifteen (15) days prior to expiration of the current Term.**

**8. NOTICE** Any notice or communication permitted or required by this Agreement shall be deemed effective when delivered by email, or personally delivered or deposited, postage prepaid, in the first class mail of the United States properly addressed to the appropriate party at the address set forth below:

      **A. Notices to Actor:** Kirby M. Hiscox, 2433 Cloud Peak Lane, Round Rock, Texas, 78681.

      **B. Notices to the Producer:** Adrian James, 6702 Troll Haven, Austin, Texas, 78746.

**9. MISCELLANEOUS**

      **A. Entire Agreement and Amendments.** This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral. No amendment or extension of the Agreement shall be binding unless in writing and signed by both parties.

      **B. Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of Actor and the Actor's successors and assigns, and the Producer and the Producer's successors and assigns.

      **C. Governing Law, Severability.** This Agreement shall be governed by the laws of the State of Texas. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

WHEREFORE, the parties have executed this Agreement as of the date first written above.

Adrian James

Signed: _____    Dated: ___11/19/2012___

Name Printed: ___Adrian James___

Kirby M. Hiscox

Signed: _____    Dated: ___Nov 19, 2012___

Name Printed: ___KIRBY M. HISCOX___

**<span style="color:red">EXHIBIT A</span>**

3

NO. C-1-CV-14-008643

| KIRBY HISCOX, | § | IN THE COUNTY COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ADRIAN JAMES, | § | |
| | § | |
| Defendant | § | COURT NO. ONE |

## AFFIDAVIT OF HENRY J. NOVAK
## IN SUPPORT OF AWARD OF ATTORNEYS FEES

| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF TRAVIS | § | |

BEFORE ME, the undersigned authority, on this date personally appeared Henry J. Novak, Affiant and Plaintiff's counsel in the above styled cause, who being duly sworn, under oath, deposed and stated the following:

1.  My name is Henry J. Novak. I am over the age of 21 years, and am competent to make this Affidavit. I have never been convicted of a felony or other crime involving moral turpitude, and am in all respects qualified to make this Affidavit. The facts set forth in this Affidavit are within my knowledge, and are true and correct.

2.  I am an attorney and a solo practitioner. I am Plaintiff's counsel of record in the above-captioned cause of action.

3.  I have been licensed by the Texas Supreme Court to practice law in the State of Texas since September 1966. I am familiar with the nature of this case, the work I've performed and the number of hours it has taken me to do the work. I'm a former federal criminal prosecutor with the Department of Justice (seven years) and have practiced civil litigation in the courts of Travis and Williamson Counties and in the U. S. District Court for the Western and

Southern Districts of Texas for over 20 years. Because of my state court practice, I am familiar with the fee that small firm lawyers of experience and abilities similar to mine are charging in Travis County, Texas, for the trial of cases in county court, which is $300.00 to $350.00.

4.    This Affidavit is given in connection with *Plaintiff's Motion for Summary Judgment*.

4.    The prosecution of the Plaintiff's cause of action in this matter required the rendering of the following legal services on my part:

   a.    Review and recurring analyses of a contract for acting services created by Plaintiff (1.8 hrs);

   b.    Preparation and delivery of letter to the Defendant by Federal Express on or about August 31, 2013, demanding payment due and owing to Plaintiff under the terms of the acting contract (a true copy of this letter is attached hereto as **Exhibit A**) (.75 hrs.);

   c.    Review of the pleadings in a small claims court case field by the Plaintiff against the Defendant that was dismissed without prejudice because the relief sought exceeded the jurisdiction of the small claims court (.75 hrs.);

   d.    Consultations and numerous meetings with the Plaintiff discussing the facts and legal implications of the contract for acting services (3.5 hrs.);

   e.    Email exchanges with opposing counsel in an attempt to resolve the differences between our clients prior to filing suit (.5 hrs.);

   f.    Preparation, revision, modification and filing of Plaintiff's Original Petition in this case (3.8 hrs.);

g.  Preparation of Plaintiff's Response to Defendant's Request for Disclosures (.75 hrs.);

h.  Preparation of Motion for Summary Judgment (4.1 hrs.);

i.  Preparation of Plaintiff's Affidavit in Support Motion for Summary Judgment (1.9 hrs.);

j.  Preparation of this Affidavit in Support of Award of Attorneys Fees (.95 hrs.);

k.  Travel to and from my office to the courthouse and attendance at hearing on Motion for Summary Judgment on February 4, 2015 (3.00 hrs);* and

l.  Preparation of Order granting Plaintiff judgment against Defendant (.5 hrs.).*

m.  Total hours 22.3.

5.  I incurred an expense of $257.00 on behalf of the Plaintiff for filing the Plaintiff's Original Petition with the Travis County Clerk, Civil Division.

6.  Considering the time, labor and skill required; the intricacies of the contract in issue; the preclusion of other employment on my part; the customary hourly rate of Travis County lawyers in prosecuting a non-jury case in county court; my personal experience, and the experience, reputation and ability of counsel for the Defendant, it is my opinion that (1) reasonable and necessary attorneys fees for the 22.3 hours of legal services I have rendered and will render through the date of entry of an order granting Plaintiff's Motion for Summary Judgment, based on $350.00 an hour, are $7,805.00; (2) that reasonable and necessary costs to date would be the sum of $257.00 for the filing fee; and further that (3) the Court should award me reasonable and necessary fees (i) in the sum of $3,500.00 for legal services if this case is appealed to and successfully defended in the Court of Appeals, (ii) plus the sum of $5,000.00 for

legal services in the event application is made for Writ of Error to the Texas Supreme Court, (iii) plus the sum of $7,500.00 for legal services in the event Writ of Error is granted by the Texas Supreme Court and this case is successfully defended in the Texas Supreme Court.

In summary, I'm asking the Court to award me reasonable and necessary attorneys fees of $7,805.00 and costs of $257.00, for a total award of $8,602.00.

FURTHER AFFIANT SAYETH NOT.

_____
HENRY J. NOVAK
State Bar No. 15120000


SUBSCRIBED AND SWORN TO BEFORE ME, on this the 19th day of November, 2014.

_____
Notary Public, State of Texas
Printed Name: Patricia Muniz
Notary's Seal  My Commission Expires: 04/22/15

PATRICIA MUNIZ
MY COMMISSION EXPIRES
April 22, 2015

LAW OFFICES

# HENRY J. NOVAK

11782 JOLLYVILLE ROAD, SUITE 210

AUSTIN, TEXAS 78759

(512) 765–5450

FAX (512) 532–6008

August 31, 2013

VIA FEDERAL EXPRESS
Mr. Adrian James
6702 Troll Haven
Austin, Texas, 78746

      Re:     November 19, 2012, Contract for Acting Services between Adrian James, as Producer, and Kirby Hiscox, as Actor

Dear Mr. James:

This office represents Kirby Hiscox in regard to the above–referenced Contract, entered into by you and my client on November 19, 2012. A copy of the Contract is enclosed.

Pursuant to Paragraph 4 of the Contract, in consideration for my client's agreement to reduce his acting fee from $1,500 a day to $1,000 a day, which he did, you guaranteed him a minimum of 20 shoot days of filming, the equivalent of $20,000, within the first four months of the six-month term of the Contract.

My client informs me that you provided him with only two shoot days during that four-month period and that you failed to provide him with the remaining 18 shoot days you guaranteed. Mr. Hiscox advised me that you paid him the agreed upon fee of $2,000, for those two days, but that you have failed to pay him the balance of the $18,000 fee guaranteed to him.

Accordingly, demand is made upon you for payment of the $18,000 due Mr. Hiscox under the terms of the Contract. If you fail to make payment of the $18,000 in full, on or before 30 days from the date of this letter, my client will initiate legal proceedings against you to collect that amount and will, in addition, seek recovery from you of attorneys fees and court costs incurred in securing a judgment against you. Please make your cashiers' check payable to Kirby Hiscox and mail it to me at the address on this letterhead.

Very truly yours,

Henry J. Novak

Enclosure (as stated)

**EXHIBIT A**

CAUSE NO. C-1-CV-14-008643

| KIRBY HISCOX | § | IN THE COUNTY COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ADRIAN JAMES | § | |
| | § | |
| *Defendant.* | § | COURT NUMBER ONE |

## ORDER ON DEFENDANT'S OBJECTIONS TO PLAINTIFF'S AFFIDAVIT AS INADMISSIBLE PAROLE EVIDENCE

On the 4th day of February, 2015, this Court heard Plaintiff's Motion for Summary Judgment and Defendant's Response and Objections to Plaintiff's Affidavit as Inadmissible Parole Evidence, and Defendant's Motion for Summary Judgment, and this Court after considering the pleadings and argument of counsel, on February 5, 2015, granted Plaintiff's Motion for Summary Judgment and Denied Defendant's Motion for Summary Judgment. In conjunction with its ruling above, this Court sustains/overrules Defendant's Objections to Plaintiff's Affidavit as Inadmissible Parole Evidence.

IT IS THEREFORE ORDERED that Defendant's Objections to Plaintiff's Affidavit as Inadmissible Parole Evidence ~~is~~ are _Sustained_.

SIGNED on this the _12th_ day of _February_, 2015.

_____
Presiding Judge

NO. C-1-CV-14-008643

| KIRBY HISCOX, | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| | § | |
| V. | § | AT LAW NUMBER ONE |
| | § | |
| ADRIAN JAMES, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## ORDER DENYING DEFENDANT ADRIAN JAMES' MOTION FOR NEW TRIAL

BE IT REMEMBERED that on this day came on to be heard Defendant Adrian James' Motion for New Trial. After reviewing the motion and argument of counsel, the Court finds that Defendant Adrian James' Motion for New Trial should be DENIED.

IT IS THEREFORE ORDERED. ADJUDGED AND DECREED that Defendant Adrian James' Motion for New Trial is hereby DENIED.

Signed on April 16th, 2015.

JUDGE PRESIDING

**ERIC M. SHEPPERD**